**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

**RICHARD JOHNSON,** on behalf of himself and all others similarly situated,

Plaintiff,

**-v.-**

**SMITH SPORT OPTICS, INC., d/b/a Smith Optics**

Defendant.

------------------------------------------------------------x

Case No. ___________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **RICHARD JOHNSON**, ("Plaintiff" or "Mr. Johnson") individually and on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, SMITH SPORT OPTICS, INC., d/b/a Smith Optics ("Smith Optics" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*., arising from Defendant's failure to ensure that its ecommerce Website, www.smithoptics.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff, **Richard Johnson**, is a resident of Bronx County and is permanently disabled due to legal blindness. Mr. Johnson suffers from proliferative diabetic retinopathy (PDR)**,** a severe stage of diabetic eye disease that causes rapid, profound, and permanent vision loss. His low-vision evaluation confirms that he is legally blind**,** with constricted visual fields and severely impaired distance and near acuity, and that his condition requires ongoing adaptive support, mobility training, and specialized accommodations. (See Ex. A – Richard Johnson Low Vision Evaluation Report).

2. Mr. Johnson is a proficient user of screen-reading technology and keyboard

navigation, which he must rely upon to access digital environments independently. Because he cannot visually perceive website content without accessible coding, he depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and screen-reader-compatible navigation in order to browse, evaluate, and purchase goods online. For blind consumers such as Mr. Johnson, screen-reading software is not optional; it is the only means by which they can independently access the internet.

3. According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. In New York alone, hundreds of thousands of residents are blind or visually impaired. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. These protections extend to digital spaces. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web.

4. For Mr. Johnson, Smith Optics' products are not discretionary purchases; they are essential to his daily functioning, mobility, and safety. As a legally blind consumer with severe PDR, he cannot visually inspect product specifications, lens technologies, fit descriptions, or safety features in physical stores. He relies on accessible digital interfaces to obtain this information independently. Smith Optics markets its eyewear and performance gear as high-quality, durable, and engineered for safety, clarity, and protection—features uniquely important to Mr. Johnson because he cannot visually detect frame differences, lens variations, or product details. The Website is the only platform where he can independently review full product specifications, compare models, and select items tailored to his medical and mobility needs.

5. The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For

blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6. Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8. Plaintiff brings this civil action against Smith Sport Optics, Inc. d/b/a Smith Optics for its failure to design, construct, maintain, and operate its highly interactive website, www.smithoptics.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. The Delaware Secretary of State confirms that **Smith Sport Optics, Inc.** is an active Delaware corporation, incorporated on August 1, 1989, and operating nationwide under the trade name Smith Optics.

9. On **June 12, 2026**, **July 8, 2026**, and **August 19, 2026**, Plaintiff attempted to access Defendant's website using screen-reader technology in order to research and purchase Smith Optics' performance products, including: (a) the **Wildcat Sunglasses**; and (b) the **Women's MTB Short Sleeve Jersey**. These products appear directly on the pages Plaintiff attempted to access, as confirmed by the WAVE reports showing product images, headings, pricing, and "Add to Cart" controls.

10. Despite multiple attempts, Plaintiff was unable to independently complete his objectives due to persistent access barriers. Automated WAVE audits of the exact pages Plaintiff attempted to access—including the **Wildcat Sunglasses** product page and the **Women's MTB Jersey – Short Sleeve** page—revealed missing alternative text, empty buttons, empty headings, missing form labels, redundant links, very small text, and **broken ARIA references** (119 on the Wildcat page; 16 on the MTB Jersey page). These barriers prevented Plaintiff's screen reader from announcing product names, lens options, color selections, pricing, and "Add to Cart" buttons.

11. The accessibility barriers were pervasive across the pages Plaintiff attempted to use. The WAVE reports confirm that Defendant's Website is not coded in a manner compatible with screen-reader technology. The broken ARIA references, unlabeled buttons, empty links, missing alternative text, and keyboard traps prevented Plaintiff from identifying products, reviewing ingredient lists, comparing options, selecting quantities, or completing checkout. These barriers denied Plaintiff equal access to the goods and services Defendant provides to nondisabled customers. Exhibit B

12. Defendant operates a retail e-commerce platform through which consumers can browse performance eyewear, cycling apparel, helmets, and related products, review product-specific information, and purchase items directly online. Plaintiff specifically sought out Defendant because of its specialized performance eyewear and protective gear, which are uniquely

suited to the needs of blind users who rely heavily on accessible product descriptions, fit details, and safety specifications. As a legally blind consumer, Plaintiff relies on accessible digital interfaces and descriptive labeling to make informed purchasing decisions. Defendant's failure to provide an accessible website denied him equal access to the goods and services it provides to nondisabled customers.

13. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.smithoptics.com becomes and remains accessible to blind and visually impaired users. Plaintiff remains genuinely interested in purchasing the products offered by Defendant and intends to return to the website as soon as it is remediated so that he may independently browse and obtain information about products for himself and his daily mobility needs. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

## JURISDICTION & VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

15. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto*

*Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

17. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward Bronx consumers through its highly interactive ecommerce website www.smithoptics.com which allows users to browse inventory, review product information, create accounts, and complete purchases. Defendant ships products directly to New York residents, including Bronx County and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

18. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online

19. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

20. Plaintiff **Richard Johnson** is, and at all relevant times was, a resident of Bronx County, New York. Mr. Johnson is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by his low-vision evaluation conducted by Dr. Eleonora Orloff, O.D., Mr.

Johnson suffers from proliferative diabetic retinopathy (PDR), a severe and progressive retinal disease that causes rapid and permanent vision loss. His evaluation confirms that he is legally blind**,** with constricted visual fields and severely impaired distance and near acuity, and that his condition requires ongoing adaptive support, mobility training, and specialized accommodations. (See Ex. A – Richard Johnson Low Vision Evaluation Report).

21. Plaintiff is a proficient user of screen-reader technology, including JAWS and VoiceOver, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because he cannot visually interpret printed or digital information without assistive technology, Mr. Johnson depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software. Proper semantic structure, meaningful alternative text, labeled interactive controls, and accessible navigation are essential for him to independently access digital content.

22. Defendant Smith Sport Optics, Inc., is a Delaware domestic corporation organized under the laws of the State of Delaware. The Delaware Secretary of State confirms that Smith Sport Optics, Inc. (File No. 2203807) is an active Delaware corporation, originally incorporated on August 1, 1989, and currently in good standing. The entity's registered agent is Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808.

23. Smith Sport Optics, Inc. conducts business under the trade name Smith Optics**,** a nationally recognized brand specializing in performance eyewear, cycling eyewear, ski goggles, helmets, and outdoor sporting equipment. Defendant's corporate profile identifies Smith Optics as a leading manufacturer of innovative, durable, top-quality eyewear and protective gear, with a long history of product development dating back to 1965.

24. According to Defendant's corporate profile, Smith Optics generates approximately $230.5 million in annual revenue and employs at least 314 individuals, with employees located

across Oregon, Idaho, Utah, and other states. Defendant's primary U.S. business address is 220 SE Martin Luther King Jr Blvd, Portland, Oregon 97214, confirming its substantial domestic operational footprint.

25. Defendant owns, operates, and controls the highly interactive e-commerce website www.smithoptics.com, through which consumers nationwide—including those in New York—can browse inventory, review product specifications, access lens technology descriptions, create accounts, and purchase items directly online. The website is the exclusive digital platform through which Defendant markets and sells its products to the general public.

26. By operating a nationwide retail website, shipping products directly to New York residents, and deriving substantial revenue from sales to consumers in this State, Defendant purposefully avails itself of the privilege of conducting business within the Southern District of New York. Defendant's commercial activities establish continuous and systematic contacts sufficient to subject it to personal jurisdiction in this District.

## STATEMENT OF FACTS

### I. Plaintiff's Attempts to Access the Smith Optics Product Pages

27. Plaintiff, **Richard Johnson**, is legally blind due to proliferative diabetic retinopathy (PDR), a severe retinal disease that causes rapid, profound, and permanent vision loss. His low-vision evaluation confirms that he "is legally blind," with constricted visual fields and severely impaired distance and near acuity, and that his condition requires ongoing adaptive support and specialized accommodations. (See Ex. A – Richard Johnson Low Vision Evaluation Report).

28. As a blind consumer, Mr. Johnson relies exclusively on screen-reading software and keyboard navigation to access digital content. He cannot visually inspect product specifications, lens technologies, fit descriptions, or safety features in physical stores. For him, accessible websites are the only means of independently obtaining product information, comparing options, and completing

online purchases.

29. Smith Optics is a nationally recognized brand specializing in performance eyewear, cycling eyewear, ski goggles, helmets, and outdoor sporting equipment. Defendant markets its products as innovative, durable, and engineered for clarity, protection, and high-performance use—features uniquely important to Mr. Johnson because he cannot visually detect frame differences, lens variations, or product details.

30. Smith Optics' product line includes high-contrast ChromaPop™ lenses, protective cycling eyewear, mountain-bike helmets, performance jerseys, and hybrid sunglasses designed for outdoor mobility and safety. These products are uniquely important to Mr. Johnson because he relies on enhanced contrast, protective coverage, and stable fit to safely navigate outdoor environments despite severe vision impairment.

31. Defendant operates a highly interactive e-commerce website, www.smithoptics.com, through which consumers can browse inventory, review product specifications, and purchase items directly online. The Delaware Secretary of State confirms that **Smith Sport Optics, Inc.** is the active legal entity operating the Smith Optics brand and website.

32. On **June 12, 2026**, **July 8, 2026**, and **August 19, 2026**, Plaintiff visited Defendant's website with the genuine intent to research and purchase two specific products that appear directly in the WAVE reports he accessed: (a) **Wildcat Sunglasses**; and (b) **Women's MTB Jersey – Short Sleeve**. These products are displayed on the "Wildcat" product page and the "Women's MTB Jersey – Short Sleeve" page, as shown in the WAVE scans.

33. Plaintiff selected Smith Optics over other companies selling similar products because Defendant's brand is widely promoted as high-performance, safety-focused, and engineered for outdoor mobility. RocketReach confirms that Smith Optics manufactures top-quality eyewear and protective gear trusted by athletes and outdoor users worldwide. For a blind consumer who cannot

visually inspect physical products, Smith Optics' emphasis on clarity, protection, and durability made Defendant's website the most logical and trustworthy choice.

34. During each visit, Plaintiff attempted to browse product listings, review lens technology information, compare product specifications, and add items to his cart. However, he was unable to complete these tasks due to pervasive accessibility barriers that prevented his screen reader from interpreting the website's content.

35. The WAVE report for the **Women's MTB Jersey – Short Sleeve** page identified **25 Errors**, including: • Missing alternative text • Linked images missing alternative text • Empty buttons • Empty headings • Missing form labels • 16 Broken ARIA references**.**

These errors prevented Plaintiff's screen reader from announcing product names, color selections, size options, pricing, and "Add to Cart" buttons.

36. The WAVE report for the **Wildcat Sunglasses** page identified **132 Errors**, including: • Missing alternative text • Empty buttons • Empty headings • Missing form labels • 119 Broken ARIA references

These barriers prevented Plaintiff from navigating lens options, accessing fit descriptions, reviewing product specifications, or activating "Add to Cart" controls.

37. Across both pages, WAVE detected additional barriers including: • Non-semantic interactive controls • Improper ARIA labeling • Tabindex = -1 keyboard traps • Low-contrast text • Unlabeled search fields • Unlabeled live-chat controls These errors rendered the website incompatible with screen-reading technology and prevented Plaintiff from independently accessing the same information available to sighted users.

38. Because of these barriers, Plaintiff could not: • Identify product names or headings; • Access lens technology descriptions or fit specifications; • Navigate product grids; • Activate "Add to Cart" buttons; • Determine pricing or quantity options; • Complete checkout. His

attempts to purchase the Wildcat Sunglasses and Women's MTB Jersey were repeatedly frustrated.

39. Defendant's failure to provide an accessible website denied Plaintiff equal access to the goods and services it offers to nondisabled customers. The barriers he encountered were not isolated or technical anomalies—they were systemic coding failures documented across multiple pages and multiple visits.

40. Plaintiff remains genuinely interested in purchasing Defendant's products and intends to return to the website as soon as it is remediated. However, until Defendant corrects the accessibility barriers identified in the WAVE reports, Plaintiff and other blind consumers will continue to be excluded from equal participation in Defendant's online marketplace.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of himself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access www.smithoptics.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

42. Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York, who have attempted to access www.smithoptics.com and were denied equal access to the goods, services, and information offered thereon.

43. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its earbuds and audio products to consumers throughout the United States. Upon information and belief, thousands

of blind and visually impaired individuals have attempted to access www.smithoptics.com and have been denied equal access due to the systemic accessibility barriers confirmed by SortSite and WAVE audits.

44. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

45. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screenreading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite and WAVE reports.

46. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

47. Defendant has acted or refused to act on grounds generally applicable to the Class

and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

48. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

49. Plaintiff, **RICHARD JOHNSON**, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

50. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

51. Defendant's Website, www.smithoptics.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

52. Defendant has failed to design, construct, maintain, and operate its website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of

the ADA and its implementing regulations.

53. Defendant's website contains numerous accessibility barriers—including missing alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper heading structure, and aria-hidden focusable content—that prevent blind users from perceiving, navigating, and interacting with the website.

54. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

55. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

56. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under

the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.smithoptics.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

57. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

58. Plaintiff, **RICHARD JOHNSON,** on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

59. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

60. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

61. Defendants, at all relevant times to this action, own and operate a place of public

accommodation, the subject Website, www.smithoptics.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

62. Plaintiff has visited the Website, www.smithoptics.com on a number of occasions and has encountered barriers to her access that exist.

63. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

64. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

65. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y.

Exec. Law § 296(2)(c).

66. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

67. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

68. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

69. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

70. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

71. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

72. An actual controversy has arisen and now exists between the parties in that Plaintiff

contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

73. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

74. Plaintiff, **RICHARD JOHNSON,** on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

75. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

76. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

77. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

78. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the

N.Y. Civil Rights Law.

79. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.smithoptics.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

80. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

81. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

82. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

83. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

84. Plaintiff, **RICHARD JOHNSON.** on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

85. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public

accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

86. Defendant is subject to NYCHRL because it owns and operates the Website, www.smithoptics.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

87. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

88. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

89. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

90. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

91. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

92. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

93. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

94. Plaintiff is also entitled to reasonable attorneys' fees and costs.

95. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

96. Plaintiff, **RICHARD JOHNSON**, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

97. An actual controversy has arisen and now exists between the parties in that Plaintiff

contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

98. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.smithoptics.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and

- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
September 1, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com